UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-09-516 |
| | § | |
| EUSTOLIO GARCIA PONCE | § | |

**MEMORANDUM AND ORDER**

Eustolio Garcia Ponce is charged with illegally entering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Garcia has moved to dismiss the indictment on due process grounds, (Docket Entry No. 21), and the government has responded, (Docket Entry No. 22). Based on a careful consideration of the indictment, the motion and response, the arguments of counsel, and the applicable law, this court denies Garcia's motion to dismiss. The reasons for this ruling are explained below.

**I.     Background**

Garcia, a citizen of Mexico, was convicted of aggravated assault in Harris County, Texas in February 2000 and sentenced to a two-year prison term. (Docket Entry No. 22, Ex. G at 2). While in prison, he was interviewed by immigration officials. Because he had been convicted of an aggravated felony, he was placed in expedited removal proceedings. On January 29, 2002, Garcia was served with a Notice of Intent to Issue a Final Administrative Removal Order. (*Id.* at 3). Garcia signed to acknowledge that he had received the Notice. He checked none of the boxes contesting removal from the United States. He did check the box indicating that he waived the 14-day waiting period before execution of the Final Removal Order. He also checked the box that was next to the following statement:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order. I do not wish to request withholding or deferral of removal. I wish to be deported to Mexico.

(*Id.* at 3). An immigration officer certified on the form that the officer had "explained and/or served" the Notice of Intent to Garcia in both English and Spanish. (*Id.*). The document is in English. Spanish is the only language Garcia can speak or read. (Docket Entry No. 21 at 2).

The following day, January 30, 2002, an immigration official signed a Final Administrative Removal Order finding Garcia deportable and ordering him removed to Mexico. (Docket Entry No. 22, Ex. G at 1). The final order was served on Garcia on January 31, 2002. (*Id.*). On February 6, 2002, Garcia was given a written Warning to Alien Ordered Removed or Deported, a Form I-294. (Docket Entry No. 22, Ex. F at 3). Form I-294 notifies aliens convicted of an aggravated felony that they may not return to the United States at any time. The crucial language is set off in a separate box at the bottom of the page. It states:

> WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States during the period in which he or she is barred from doing so without the Attorney general's consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000.

(*Id.*). This document is also written in English. The record does not show that this document was read to Garcia in Spanish. (Docket Entry No. 21 at 2). Garcia was deported to Mexico from Brownsville, Texas the next day, February 7, 2002. (Docket Entry No. 22, Ex. F at 2).

At some point, Garcia returned to the United States. He was arrested for a traffic offense and found in the United States by immigration officials. On August 12, 2009, he was indicted for unlawful entry in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Docket Entry No. 1). On October 2, 2009, Garcia moved to dismiss the indictment, arguing that when he was removed, he did not have sufficient notice of the criminal exposure he would face on reentry. (Docket Entry No. 21 at 2). Garcia contends that the documents should have been presented to him in Spanish, particularly the documents explaining the consequence of reentering the United States, and that he should have been "presented before an Immigration Judge to have warnings and the consequence of re-entry into the United States communicated to him by an official interpreter." (*Id.*). Because these steps were not taken, Garcia argues, he "has been prejudiced in that he now faces imprisonment" for reentering the United States. (*Id.*). The government responded to the motion to dismiss on October 19, 2009. (Docket Entry No. 22 at 3).

## II.     The Applicable Law

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). A challenged indictment should not be dismissed if it alleges every element of the offense. *See, e.g., United States. v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000); *United States v. Nevers*, 7 F.3d 59, 62-63 (5th Cir. 1993). In considering a pretrial motion to dismiss an indictment, a court must accept the allegations in the indictment as true. *See United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975). "A pretrial motion to dismiss an indictment is not a proper vehicle to challenge the adequacy of the Government's evidence." *United States v. Singleton*, 2006 WL 1984467, at *1-2 (S.D. Tex. Jul. 14, 2006) (citing *Mann*, 517 F.2d at 267). "[A]n indictment returned by a legally constituted and

unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Mann*, 517 F.2d at 267 (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).

Indictments for illegal reentry under 8 U.S.C. § 1326 are, however, subject to dismissal when the defendant's original removal violated his procedural due process rights. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39, 107 S. Ct. 2148 (1987). When a defendant challenges an indictment by collaterally attacking a prior removal order, the defendant must show: "(1) that the deportation hearing was fundamentally unfair, (2) that the hearing effectively eliminated the right of the [defendant] to challenge the hearing by means of judicial review of the deportation, and (3) that the procedural deficiencies caused him actual prejudice." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999).

### III. Analysis

Garcia claims that he was not given proper notice at the removal proceedings because he "was asked to sign documentation written in English and those documents were not read to him in the Spanish language." (Docket Entry No. 21 at 2). It appears from the record that Garcia signed two documents: the Notice of Intent to Issue a Final Administrative Removal Order and the removal warrant, which Garcia signed below his photograph and fingerprint. Garcia's claim as to the Notice of Intent is contradicted by the document itself, in which the immigration official certified that he "explained and/or served" the notice to Garcia in both English and Spanish on January 29, 2002. (Docket Entry No. 22, Ex. G at 3).

The government argues that even if Garcia was not given notice in Spanish of the grounds for removal, his collateral attack on the removal cannot succeed. Specifically, the government contends that Garcia's claim fails to satisfy the third prong of the Fifth Circuit's due process analysis

4

because Garcia suffered no "actual prejudice." *See Benitez-Villafuerte*, 186 F.3d at 658-59.  Under Fifth Circuit case law, "[a] showing of prejudice means there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Id.* (quotation marks removed) (quoting *United States v. Estrada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995) and *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406 (5th Cir. 1992)); *see also Guzman-Ocampo*, 236 F.3d at 239.  The defendant in *Benitez-Villafuerte* was convicted of an aggravated felony and sentenced, then placed in expedited removal proceedings under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1228, the same statutory proceedings Garcia faced.  He was deported to Mexico but later returned to the United States and was prosecuted under § 1326.  In *Benitez-Villafuerte*, the appellate court rejected the defendant's collateral attack on the deportation proceedings, holding that there was no "actual prejudice" under § 1228(c) because an alien convicted of an aggravated felony is "conclusively presumed to be deportable." *Benitez-Villafuerte*, 186 F.3d at 659 (citing § 1228(c)).  Whether or not the alleged errors in the deportation proceeding had occurred, the defendant would have been deported. *Id.*  The court noted that aliens convicted of aggravated felonies are ineligible for discretionary relief from removal. *Id.* (citing § 1228(b)(5)).

Garcia does not dispute that his prior conviction for aggravated assault was valid or that it qualified as an aggravated felony.  The Fifth Circuit has held that violations of the Texas aggravated assault statute are aggravated felonies. *United States v. Guillen-Alvarez*, 489 F.3d 197, 200-01 (5th Cir. 2007).  Like Benitez-Villafuerte, Garcia was an alien convicted of an aggravated felony, making it a "foregone conclusion" that he would be deported and preventing any finding of "actual prejudice." *Benitez-Villafuerte*, 186 F.3d at 659.  Garcia's argument that his due process rights were

violated because the removal documents were not translated into Spanish is precluded by *Benitez-Villafuerte* and the related Fifth Circuit precedent.

Garcia also urges dismissal because he received no Spanish-language document notifying him in writing that he would face criminal prosecution if he reentered the United States. Garcia received Form I-294, which discussed the consequences of reentry, but in English. The government admits that from the record, it appears that Garcia did not receive a Spanish translation of the document. The government cites *United States v. Perez-Torres*, 15 F.3d 403 (5th Cir. 1994), for the proposition that a defect in Form I-294 does not establish a due process violation or support dismissing an indictment. In *Perez-Torres*, the court addressed the due process claim of a defendant who, on his deportation in 1992, was given a Form I-294 with inaccurate information. The form stated that reentry was a felony under 8 U.S.C. § 1326, publishable by a term of imprisonment not longer than two years. Immigration officials told Perez-Torres the same information. In fact, a 1988 amendment to § 1326 had increased maximum authorized sentence to fifteen years for aliens who, like Perez-Torres, had previously been convicted of an aggravated felony. *Id*. at 404-05. Perez-Torres returned to the United States, where he was arrested, convicted under § 1326, and sentenced to a 60-month prison term. He appealed, arguing that sentencing him to a longer term than the two-year maximum stated on the Form I-294 violated his due process rights. The Fifth Circuit upheld the sentence, finding that, although vague sentencing provisions may violate due process, *United States v. Batchelder*, 442 U.S. 114, 121, 99 S. Ct. 2198 (1979), the only relevant question was whether the criminal statute provided fair notice of the penalties. *Perez-Torres*, 15 F.3d at 406. The court held:

> Form I-294 is not a criminal statute. Hence, the defect Perez complains of lies not in the underlying statute, but rather in a

> provision of a document with no relevant legal force. As Perez concedes, section 1326 clearly and unambiguously articulated the penalties associated with a reentry offense. Thus, regardless of the inaccuracy of Form I-294, the *statute* under which Perez was convicted provided notice adequate to satisfy the requirements of due process. Indeed, a penalty not provided for in the statute of conviction is adequately noticed by being called for in a separate statute.

*Id.* (emphasis original). Other circuits faced with the same issue have reached the same result. *See, e.g., United States v. Aquino-Chacon*, 109 F.3d 936, 938 (4th Cir. 1997) ("Without question, § 1326(a) clearly provides notice that unapproved reentry at any time following deportation is proscribed. . . . Accordingly, the notice provided by the statute is sufficient to satisfy the demands of due process."); *United States v. McCalla*, 38 F.3d 675, 679 (3d Cir. 1994) ("Although the inaccuracy in Form I-294 was regrettable, perhaps inexcusable, due process requires that it is the *criminal statute* which must clearly set forth the activity which constitutes a crime and the punishment authorized for committing such a crime. Section 1326(b)(2) clearly comports with the due process requirement of fair notice." (emphasis original) (internal citations omitted)); *United States v. Samaniego-Rodriguez*, 32 F.3d 242, 244 (7th Cir. 1994) ("the defendants' reliance on Form I-294 to establish a due process violation is misplaced"); *United States v. Arate-Nunez*, 18 F.3d 730, 737 (9th Cir. 1994) ("The INS did not undertake or promise to inform Arzate-Nunez of all the possible future penalties to which he might be subject. Thus, although the INS might well improve the accuracy of its warning letter, no due process violation has occurred.").

Like Perez-Torres, Garcia may have been subjectively unaware of the consequences he would face for returning to the United States. The precedents show that the lack of awareness is not an excuse or a basis for claiming a due process violation. Section 1326(a) and (b)(2) provided Garcia with clear notice that returning to United States would subject him to criminal prosecution

and a maximum penalty of 20 years imprisonment, a $250,000 fine, 3 years of supervised release, and a $100 special assessment. Garcia has no basis to challenge the statute as vague. *See Perez-Torres*, 15 F.3d at 406. And under the existing case law, he may not assert a due process challenge based on inadequate notice in Form I-294. Garcia's motion to dismiss the indictment on this basis is denied.

Garcia's final argument is that he was not able to affirm that he understood the consequences of reentry because he "was not presented before an Immigration Judge to have warnings and the consequences of re-entry into the United States communicated to him by an official interpreter." (Docket Entry No. 21 at 2). This argument is also foreclosed by *Benitez-Villafuerte*, 186 F.3d at 656-68, in which the Fifth Circuit held that the § 1228 expedited removal procedures provide an "unimpeded opportunity to claim all the procedural due process to which [the alien] is constitutionally entitled." *Id.* at 657.

Under the statute, before deportation, the Attorney General must ensure that:

> (A) the alien is given reasonable notice of the charges and of the opportunity described in subparagraph (C);
>
> (B) the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose;
>
> (C) the alien has a reasonable opportunity to inspect the evidence and rebut the charges;
>
> (D) a determination is made for the record that the individual upon whom the notice for the proceeding under this section is served (either in person or by mail) is, in fact, the alien named in such notice;
>
> (E) a record is maintained for judicial review; and

>       (F) the final order of removal is not adjudicated by the same person
>       who issues the charges.

8 U.S.C. § 1228(b)(4). The final procedural requirement is that the Attorney General not execute any final order of removal for 14 days after it is issued, "unless waived by the alien, in order that the alien has an opportunity for judicial review under [8 U.S.C. § 1252]." 8 U.S.C. § 1228(b)(3).

Garcia was eligible for expedited removal proceedings because he had committed an aggravated felony. As in *Benitez-Villafuerte*, the procedural requirements in § 1228(b) were satisfied in Garcia's case. The Notice of Intent to Issue a Final Administrative Removal Order, which was read to Garcia in Spanish, explained the charges against him, and that he had a right to obtain appropriate counsel, review the government's evidence, and contest the charges against him. A written record was kept. The notice, which stated the charges, was issued by a different officer than the final removal order. Garcia waived his right to contest the charges against him or file a petition for review of the final removal order. He also waived the 14-day execution period. With these requirements met, Garcia was immediately eligible for removal from the United States. *See Benitez-Villafuerte*, 186 F.3d at 656-68. No other process was due. Moreover, even had there been a procedural defect, Garcia suffered no "actual prejudice," as case law defines the term, because he cannot demonstrate a reasonable likelihood that he would not have been deported anyway. *See id.* at 658-59.

Garcia waived his right to appear before an immigration judge to contest his deportation. Even had he not done so, there is nothing in the judicial review statute, 8 U.S.C. § 1252, that would have required the magistrate to, as Garcia contends, advise him of the consequences of reentry, through an official interpreter or otherwise. Fair notice of those consequences is provided by §

1326. *See Perez-Torres*, 15 F.3d at 406. The motion to dismiss the indictment on this basis is denied.

**IV. Conclusion**

Garcia's motion to dismiss the indictment is denied.

SIGNED on November 4, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge